United States District Court
Southern District of Texas
**ENTERED**
February 06, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Charlotte M. Wilson, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-168 |
| | § | |
| Nancy A. Berryhill, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
|     *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Charlotte M. Wilson appeals the Social Security Administration Commissioner's final decision denying her application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 9) and Defendant's Cross-Motion for Summary Judgment. (D.E. 10.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

**1. Procedural Posture**

Wilson applied for supplemental security income on February 11, 2015, and for widow's insurance benefits on January 27, 2016. (Tr. 200, 209.) Wilson claimed that she became disabled on June 30, 2011, due to bipolar disorder, depression, and

lupus. (Tr. 200, 229.) During the hearing, Wilson amended her alleged onset disability date to October 23, 2013, because her claim for widow's insurance benefits could only date back that far. (Tr. 67.)

In her benefits application, Wilson stated that she was born in 1965. (Tr. 200.) She had not worked since 1999. (Tr. 229.) The Social Security Administration denied Wilson's disability and benefits applications on May 8, 2015. (Tr. 106–11.) Wilson sought reconsideration on May 19, 2015. (Tr. 123–24.) That request was denied on October 16, 2015. (Tr. 126–29.) Wilson requested a hearing.

Administrative Law Judge (ALJ) Caroline H. Beers held a hearing on August 1, 2017, in Houston, Texas. (Tr. 56–86.) The ALJ issued a decision on October 4, 2017, finding that Wilson was not disabled. (Tr. 13–35.) The Appeals Council denied Wilson's request for review on November 19, 2018. (Tr. 1–6.) Wilson filed her complaint in federal court on January 15, 2019, to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

3

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (Listing). If all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Id.* at 461.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on August 1, 2017, the ALJ admitted timely-filed medical evidence into the record. (Tr. 59.) The ALJ refused to admit late-filed hospital records. *Id.* Wilson's attorney did not object to that ruling. *Id.* The attorney provided a brief overview of Wilson's impairments in an opening statement. (Tr. 62.) The ALJ then heard testimony from Wilson and a vocational expert (VE). (Tr. 60–86.)

Wilson testified about her work-history, her family, and her daily activities. (Tr. 63–79.) She testified that she saw a psychiatrist every three months and took prescription medication to help with her depression. (Tr. 71.)

The VE testified that Wilson had no vocational work history. (Tr. 80.) He testified that a person with Wilson's RFC and limitations would be able to perform

5

work as a security guard, a rental car deliverer, a general office clerk, a photocopy machine operator, a clerical assistant, or a mail clerk. (Tr. 80–83.) The VE gave his estimate of the number of jobs that exist in the national economy for each job category. *Id.* He testified that this hypothetical person could perform competitive work if they were doing satisfactory work at least eighty percent of the time and were not absent more than twice per month. (Tr. 83.) The VE's testimony was based on his training and experience and did not conflict with the Dictionary of Occupational Titles (DOT). (Tr. 85.)

The ALJ issued her decision on October 4, 2017, finding that Wilson was not disabled. (Tr. 13.)

### 4. Analysis
#### A. The ALJ's Decision
(1) Step One

At step one, the ALJ correctly found that Wilson had not engaged in substantial gainful activity since the alleged disability onset date of June 30, 2011. (Tr. 19.)

(2) Step Two

At step two, the ALJ found that Wilson had the following severe impairments: right hip replacement, morbid obesity, left shoulder surgical repair, systemic lupus erythematosus (SLE), osteoarthritis of the knee, and depression. (Tr. 19.)

The ALJ also found non-severe impairments including: diabetes mellitus, hypertension, gout, lumbar radiculopathy, elevated liver function, osteopenia, and dyspnea. (Tr.19.)

Wilson complained that she suffered from bipolar disorder but offered no medical evidence to support that claim outside of her self-reported diagnosis. Thus, the ALJ found it to be a non-medically determinable impairment. (Tr. 20); *see* 20 C.F.R. § 404.1521 (2017) ("A physical or mental impairment must be established by objective medical evidence from an acceptable medical source.").

Wilson argues that the ALJ erred by failing to find that her depression is a severe impairment. She argues at length that the ALJ should have admitted additional late-filed treatment records into evidence because those records would have convinced the ALJ that Wilson's depression was a severe impairment. Wilson misreads the ALJ's decision. The ALJ *did* find Wilson's depression to be a severe impairment. There was no error.

In her reply brief, Wilson also argues—for the first time—that had the excluded evidence been considered, the ALJ would have found Wilson's reported bipolar disorder to be a severe impairment. This argument lacks merit. First, the late-filed records are cumulative of those already considered. *Compare* Tr. 41–55 *with* Tr. 497–513 (both reporting no abnormalities in mental status and no changes in diagnosis). A portion of the excluded records are identical to those already

7

considered. *Compare* Tr. 497–501 *with* Tr. 51–55. Second, none of these records make any reference to bipolar disorder. Wilson has not shown how consideration of the excluded evidence would change the outcome of the ALJ's finding at step two.

The court's review of the record confirms that the ALJ's step-two findings are supported by substantial evidence.

### (3) Step Three

At step three, the ALJ found that Wilson's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. The ALJ appropriately considered Listing sections 1.02 (joints), 12.04 (depression), and 14.02 (lupus). (Tr. 21.) The ALJ also considered obesity at each step of the evaluation under Social Security Ruling 02-1p, 2000 WL 628049 (Sept. 12, 2002).

Wilson argues that her combined impairments may have produced a listing equivalency and that the ALJ should have obtained an updated opinion from a medical expert to make that determination. Wilson does not identify which listing equivalency she believes she meets. She does not articulate the type of medical expert that could have added to the ALJ's determination. She does not explain how an updated opinion may have changed the result. Instead, she concludes that "an objective consideration" of her impairments "might very well have produced a listing equivalence." (D.E. 9 at 6–7.)

8

The claimant has the duty to "present medical findings equal in severity to *all* the criteria" of a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). A court may not reverse an ALJ's decision for lack of substantial evidence if the claimant does not show how the alleged deficiencies prejudiced the final determination. *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).

The court's independent review of the record shows that substantial evidence supports the ALJ's findings. Wilson has not presented evidence to contradict the ALJ's finding and has not established a prejudicial error.

(4) RFC

Before turning to the final two steps of the analysis, the ALJ determined that Wilson had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, the claimant can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. The claimant cannot perform overhead reaching with her upper (non-dominant) left extremity. She can understand, remember, and apply information in order to carry out work related activities regarding detailed but not complex instructions, and maintain concentration, persistence, and pace for 2-hour periods with customary breaks during the 8-hour workday. The claimant cannot perform any fast-paced production work. She can occasionally interact with supervisors, coworkers, and the general public.

(Tr. 24.) The ALJ relied on objective medical evidence and testimony in reaching this finding.

In determining Wilson's physical limitations, the ALJ first considered medical evidence from Wilson's treating sources. Physical examinations showed that Wilson had a normal gait and a normal range of motion in her joints. (Tr. 29–30, 536–37, 544, 636, 723–25.) Because Wilson complained of muscle weakness and pain, her treating physician recommended physical therapy. (Tr. 30, 594, 597.) Wilson testified that she did not meet with a physical therapist. (Tr. 20, 71.)

The ALJ also considered Dr. Joel Nachimson's consultative report dated April 16, 2015. (Tr. 27–28.) Dr. Nachimson's examination found that Wilson had no issues with muscle strength or walking despite Wilson's claim that she had not received rheumatology care for several years. (Tr. 27, 475, 476, 478.)

Finally, the ALJ considered the opinions rendered by State agency consultants in May and October of 2015. (Tr. 30.) Those opinions stated that Wilson could lift up to twenty pounds occasionally but limited Wilson to occasional overhead reaching with her left arm. (Tr. 30, 93–94, 106–07.) The ALJ afforded great weight to the State Agency physicians' opinions because they were consistent with the record as a whole. (Tr. 30.)

The ALJ used this evidence and Wilson's reports of difficulty breathing on exertion in limiting Wilson to the "light" level of exertion. (Tr. 32–33.) The ALJ also considered obesity with the medical findings and determined that Wilson could

only occasionally climb stairs, balance, stoop, kneel, crouch, or crawl and could never climb ladders or reach with her left arm. (Tr. 24.)

In determining Wilson's mental limitations, the ALJ considered treatment records, which show that Wilson had major depressive disorder. (Tr. 26, 469.) She later told her therapist that psychiatric prescription medications had helped her mood and he encouraged her to continue treatment. (Tr. 30, 532, 534.) Medical records showed no abnormalities in Wilson's mental condition. (Tr. 33, 399, 404, 410, 472, 498, 503, 533.)

At a psychological consultative examination in April 2015, testing revealed that Wilson's memory was adequate and that she was able to carry out simple verbal and written instructions. (Tr. 33, 473.) The examining physician determined that Wilson's judgment was intact and her mood was normal. *Id.*

The ALJ also considered State Agency consultative opinions. (Tr. 30–31.) Those assessments noted that Wilson could understand, remember, and carry out detailed but not complex instructions; make simple decisions; attend and concentrate for extended periods of time; and interact well with others. (Tr. 30–31, 92–96, 104–10.) Because those opinions were consistent with the records submitted at the hearing, the ALJ afforded them great weight in her RFC determination. *Id.*

Based on the record, the ALJ determined that Wilson could handle detailed instructions and maintain concentration but not fast-paced production work. (Tr. 33.)

11

Wilson argues that the ALJ did not include her non-severe impairments in the RFC calculation. Wilson does not explain which non-severe impairments the ALJ failed to consider or what further limitations should have been included in her RFC assessment. The court's review of the record indicates that the ALJ properly considered both severe and non-severe impairments. The ALJ did not err. *See Torres v. Colvin*, No. 5:14-CV-34, 2015 WL 12571022, at *12 (S.D. Tex. Feb. 5, 2015), *report and recommendation adopted*, No. 5:14-CV-34, 2015 WL 12551938 (S.D. Tex. Apr. 22, 2015) ("As long as the ALJ supports his decision with substantial evidence, an ALJ's failure to mention every notation in the medical record does not equate with a failure to consider the evidence."). Substantial evidence supports the ALJ's RFC determination.

(5) Step Four

At step four, the ALJ found that Wilson had no past relevant work. (Tr. 34.)

(6) Step Five

At step five, based on the VE's testimony, training, and experience, the ALJ found that Wilson could find employment in jobs that exist in significant numbers in the national economy. (Tr. 34–35.) The VE testified that someone with Wilson's age, education, work experience, and RFC would be able to work as a security guard, a rental car deliverer, a general office clerk, a photocopy machine operator, a clerical assistant, or a mail clerk. (Tr. 34, 80–83.)

Wilson argues that the ALJ's hypothetical was flawed because the RFC used in the hypothetical was flawed. As discussed, the RFC is correct, so the hypothetical based on it was proper.

The court concludes that the ALJ employed the correct legal rules and that her findings at each of the five steps were supported by substantial evidence.

### B. Wilson's arguments

Wilson argues that the ALJ did not consider her pain and other symptoms. However, the ALJ properly analyzed Wilson's symptoms and pain throughout her decision and explained which activities were limited due to pain. (Tr. 25–34.)

Wilson also argues that the ALJ failed to obtain a medical expert opinion in determining Wilson's RFC. Wilson does not say what expert opinion the ALJ should have sought, or how such further evidence would have impacted the ALJ's analysis. The record includes medical expert opinions. (Tr. 23–24, 26–27, 470–79.) Wilson's unsupported assertion does not warrant remand. *See Brock*, 84 F.3d at 728 (concluding that a court can only reverse the ALJ's decision if the claimant shows that the ALJ failed to fulfill their duty and that this failure prejudiced the claimant).

Finally, Wilson argues that her lupus diagnosis required the ALJ to make separate findings to determine whether she could both obtain and maintain employment. Separate findings on obtaining and maintaining employment are required only in cases where the evidence shows that the claimant's symptoms wax

13

and wane. *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). Wilson does not cite to any evidence in the record that show her impairments waxed and waned in severity or frequency. The medical evidence showed Wilson suffered little to no difficulty related to SLE. (Tr. 289, 292, 579, 595, 619, 621, 633, 677.) Further, Wilson never claimed that her ability to work might fluctuate over time. Instead, she claimed to have no ability to work at all. (Tr. 64, 229, 243.) Therefore, the court finds no evidence in the record to suggest that a separate finding was necessary. *See Frank*, 326 F.3d at 621 (finding no error when the ALJ did not make a separate finding on maintaining employment because claimant alleged that she could not work at all, not that she could only work for short spans of time).

## 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's finding at each of the five sequential steps. The ALJ's decision denying social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 6, 2020.

_____
Peter Bray
United States Magistrate Judge